**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **ERI BRANDS, LLC**, a Florida limited liability company; **ROCKET SYSTEMS, INC.**, a Wyoming corporation, | * * * | Civil Action No.  1:24-cv-415 |
| | * | **COMPLAINT AND JURY DEMAND** |
| Plaintiffs, | * * | |
| v. | * * | |
| **PAYNETWORX, LLC**, a Texas limited liability company; **PATHWARD FINANCIAL, INC.**, a Delaware corporation; **PATHWARD NATIONAL ASSOCIATION**, a nationally chartered South Dakota bank, | * * * * * * | |
| Defendants. | | |

NOW COME Plaintiffs, ERI Brands, LLC and Rocket Systems, Inc., by and through their counsel of record, for their Complaint against Defendants Paynetworx, LLC; Pathward Financial Inc., and Pathward National Association, and state as follows:

**THE PARTIES**

1.      Plaintiff ERI Brands, LLC (hereinafter, "ERI") is a Florida limited liability company with its principal place of business in Cincinnati, Ohio.  ERI is a merchant selling various goods on the internet.

2.      ERI's sole member is a citizen of Massachusetts, making ERI a citizen of the same.

3.      Plaintiff Rocket Systems, Inc. (hereinafter, "Rocket", and collectively with ERI, the "Plaintiffs") is a Wyoming corporation with its principal place of business in Cincinnati, Ohio. Rocket is a merchant selling various goods on the internet.

4.      Rocket is a citizen of Wyoming and Ohio because it is incorporated in Wyoming and has its principal place of business in Ohio.

5.      Defendant Paynetworx, LLC (hereinafter, "PNX") is a Texas limited liability company based in Van Alstyne, Texas.

6.      Upon information and belief, PNX is 100 percent owned by WLES, L.P., a Texas limited partnership.

7.      Upon information and belief, the general partner of WLES, L.P. is Transaction Guy & The Triumphant Ones, LLC, a Texas limited liability company.  The members of this LLC are Trent Voigt and Sue-Lynn Voigt, both of whom are domiciled in, and are citizens of, Texas.

8.      Upon information and belief, the limited partners of WLES, L.P. are Trent Voigt, Sue-Lynn Voigt (both domiciled in and citizens of Texas, as noted above), and the Voigt Family Trust.

9.      Upon information and belief, the Voigt Family Trust's trustee is Deutsche Bank, NA, a Delaware corporation with its principal place of business in New York.  The trustee is therefore a citizen of Delaware and New York.

10.      Upon information and belief, and based on the above allegations and all others contained herein, Defendant PNX is a citizen of Texas, Delaware, and New York.

11.      Defendant Pathward Financial, Inc., based on information and belief, is headquartered in Sioux Falls, South Dakota, and is incorporated in Delaware.

12.      Upon information and belief, Pathward Financial Inc. is a citizen of South Dakota and Delaware.

13.      Upon information and belief, Defendant Pathward National Association is a nationally chartered bank, which, according to its articles of association, has its main office in Sioux Falls, South Dakota, making it a citizen of South Dakota.

14.      Defendants Pathward Financial, Inc. and Pathward National Association are referenced collectively as "Pathward."    Pathward and PNX are referenced collectively as "Defendants."

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity and the matter in controversy exceeds the sum or value of seventy-five thousand dollars ($75,000), exclusive of interest, costs, and attorneys' fees.

16.     This Court has personal jurisdiction over all Defendants pursuant to Ohio's long-arm statute, O.R.C. § 2307.382, because, among other actions, Defendants have transacted business in this state, have supplied services in this state, and have caused tortious injury by their acts and omissions in this state; and, further, Defendants have such minimum contacts with the State of Ohio that the exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice.

17.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(a) as this action arises out of events that occurred in this Judicial District.  The Defendants' misconduct was directed against Rocket, a citizen of Ohio headquartered in the Southern District of Ohio.  Additionally, ERI's and Rocket's harms occurred and are still occurring within the Southern District of Ohio, where ERI and Rocket have their principal places of business.

## FACTUAL ALLEGATIONS

### *Background on Payments Industry*

18.     Each Plaintiff is, and was at all relevant times, an online marketer of various products.

19.     To have effectively engaged in the online marketplace, Plaintiffs required the ability to accept card payments from consumers using credit cards and debit cards.

20.     To accept card payments, a business (commonly referred to as a "merchant" in the payments industry) must enroll in "payment-processing services" by opening a "merchant account" with a member bank of Mastercard International Incorporated; Visa, Inc.; Discover Financial Services, LLC; American Express; and/or other networks (collectively the "Card Brands").

21.    Such member banks have agreements with the Card Brands that enable the member banks to process debit and credit card purchases from merchants that, in turn, have enrolled in payment-processing services with the member banks.  In the payments industry, the member banks are often referred to as "acquirers" or "acquiring" banks.

22.    Pathward is such a member and an acquiring bank of the Card Brands.

23.    The Card Brands also issue publicly available rules, which are relied on in the payments industry and by the public generally.  These rules, commonly known as the "Association Rules," are specific to each respective card brand.

24.    The various Association Rules impose obligations on each and every participant in the payments ecosystem.

25.    For example, under the Association Rules, acquiring banks may contract with third-party organizations to provide processing-related services to merchants under the acquirer's sponsorship with the Card Brands.

26.    On information and belief, Defendant PNX is such a third party, and acts on behalf of Defendant Pathward to provide payment-processing services to merchants for Pathward.

27.    In doing so, based on the relationship between Pathward and PNX, as described herein, PNX acted as Pathward's actual agent or, alternatively, its apparent agent when dealing with Plaintiffs.

28.    Pathward is thus vicariously liable for PNX's conduct, in addition to being directly liable for its own conduct.

29.    On information and belief, PNX is registered with the Card Brands under the sponsorship of Pathward, which means that PNX provides services on behalf of Pathward, including: soliciting prospective merchants for participation in Pathward's payment-processing services according to Pathward's prescribed underwriting guidelines and policies; onboarding those merchants

as they were approved by Pathward; and providing customer service and ongoing support to those merchants in connection with the payment-processing services, all in return for residual fees flowing from the merchants' processing activity with Pathward.

30.     The Association Rules limit how acquiring banks, like Pathward, may use third parties, like PNX.

31.     For example, acquiring banks are required to be "entirely responsible" for third-party organizations, like PNX, and must conduct "meaningful monitoring" of them and their merchants to ensure ongoing compliance with Association Rules. Specifically, the acquiring banks cannot delegate their responsibility under the Association Rules to the third-party organization and must maintain control over them.

32.     Further, on information and belief, the Merchant Financial Services Agreement between Pathward and PNX created an agency relationship between the Defendants because, consistent with that agreement, Pathward was given contractual rights to control the performance of the payment-processing services that PNX was providing for Pathward to Pathward's merchants.

33.     The Merchant Financial Services Agreement further provided that Pathward and PNX would act consistent with the Association Rules described herein.

34.     As noted above, the Association Rules also required, and created the appearance of requiring, Pathward to exercise control over third parties like PNX.

35.     The Association Rules also set forth specific rules regarding relationships between merchants (like Plaintiffs), acquiring banks (like Pathward), and third-party organizations that assist the acquiring banks with payment-processing services (like PNX).

36.     For example, the acquiring bank must agree that the third party is the agent of the acquiring bank.

37.     The acquiring bank must accept responsibility for, and must exercise control over, the

third party.

38.     The acquiring bank must approve, in advance, any fee payable to or obligation of the merchant arising from or related to the payment-process services.

39.     The acquiring bank must ensure that third parties do not have access, directly or indirectly, to any reserve account for funds or funds due to a merchant and/or funds withheld from a merchant for chargebacks arising from, or related to, performance of the merchant agreement.

### *Pathward's and PNX's Fraudulent Inducement of Plaintiffs*

40.     On or about March 23–24, 2022, Defendants PNX and Pathward induced Plaintiff ERI to enroll into payment-processing services with Defendants.

41.     On or about March 21, 2023, Defendants PNX and Pathward induced Plaintiff Rocket to enroll in payment-processing services with Defendants.

42.     On both occasions, Defendants Pathward and PNX represented to Plaintiffs that Pathward was a member of various Card Brand Associations, including Visa and Mastercard.

43.     On both occasions, Defendants Pathward and PNX represented that Pathward "sponsored" PNX, which, as noted above, has special meaning in the payments industry, including that Pathward and PNX would perform consistent with the Association Rules and that Pathward would be entirely responsible for PNX, including its errors and omissions, thereby providing a sense of security and comfort to Plaintiffs and other merchants like them.

44.     In doing so, Defendants Pathward and PNX represented to Plaintiffs that they would be bound by, and would follow, the Association Rules, including the rules regarding acquiring bank monitoring and control of third parties and bank review of fees, among others.

45.     Yet, on information and belief, Pathward did in fact assign all of its duties to PNX in violation of the Association Rules—and contrary to PNX's and Pathward's representations to Plaintiffs—and failed to properly monitor PNX, including by allowing PNX to charge exorbitant,

false, and fraudulent fees; by allowing PNX to convert or otherwise fraudulently obtain Plaintiffs'
funds; and by allowing PNX to operate without adequate supervision and oversight such that it failed
to perform its promises and representations as to the nature, level, and quality of services it committed
to provide such merchants as Plaintiffs, all as further detailed herein.

46.     Based on their course of conduct, PNX and Pathward knew that they did not intend to
follow the Association Rules when they induced ERI and Rocket to enroll in the payment-process
services, on March 23–24, 2022, and March 21, 2023, respectively, and intentionally misled Plaintiffs
into believing otherwise, all in an effort to induce them to enroll.

47.     Had Plaintiffs known that PNX and Pathward were going to act in direct contravention
of their duties under the Association Rules, or had Plaintiffs otherwise known that PNX and Pathward
intended to further defraud, mistreat, and harm Plaintiffs as further described herein, Plaintiffs never
would have enrolled in payment-processing services with Defendants.

48.     Furthermore, Pathward and its agent, PNX, pitched Pathward's and PNX's services
with false and misleading claims about their processing services to induce Plaintiffs' to enroll.

49.     Specifically, Pathward and PNX represented that their services would limit Plaintiffs'
exposure to certain fines and fees, when, in fact, Pathward's and PNX's services did not—and on
information and belief could not—do so.

50.     Moreover, Pathward and PNX represented to Plaintiffs the types and amounts of fees
they would charge, when, in fact, Pathward and PNX intended to charge other, non-disclosed fees, at
excessive rates, and often without any basis in law or fact.

51.     Further, Pathward and PNX represented that their technology, systems, and software
would allow Plaintiffs to mitigate risk from cardholder disputes, referred to as "chargebacks."

52.     By holding itself out as a member of the Card Brands, Pathward also represented to
Plaintiffs that they would monitor PNX and at all times be responsible for it, including reviewing all

fees assessed by PNX.

53.     In truth, Pathward never intended to monitor PNX and did not in fact do so.  Pathward instead failed to monitor or control PNX, which then took advantage of Plaintiffs by defrauding and damaging them as further described herein.  Pathward did not review the fees assessed by PNX and instead permitted PNX to charge Plaintiffs non-disclosed fees, at excessive rates, and often without any basis in law or fact.

54.     Pathward and PNX misrepresented and did not disclose the true nature of their services or their intended fees in an effort to induce Plaintiffs to enroll in Pathward and PNX's services.

55.     The misrepresented and non-disclosed facts about the fees and services were material to Plaintiffs' decision to enroll with Pathward and PNX, because, had Plaintiffs known about the true nature of those fees and services, Plaintiffs never would have enrolled in the services and would have instead selected different payment-processing services.

56.     Plaintiffs justifiably relied on Pathward's and PNX's representations; indeed, Pathward is a nationally chartered bank, a member of the FDIC, subject to federal regulatory oversight, and publicly traded on the Nasdaq.  Plaintiffs reasonably expected that such an institution would not intentionally misrepresent its fees and services to business consumers, like Plaintiffs.

### *Defendants' Chargeback Fraud and Related Misconduct*

57.     PNX's and Pathward's fraud did not end once they enrolled Plaintiffs in their services.  Instead, they further defrauded Plaintiffs in various ways.

58.     For example, PNX and Pathward promised Plaintiffs that they would provide chargeback monitoring, assistance in disputing chargebacks, and accounting for chargebacks that were reversed.

59.     A "chargeback" is a regular occurrence in the payment-processing ecosystem and occurs when a customer disputes the charge on its own credit or debit card, incurred for a completed

purchase of a good or service, arguing that the good or service was never received, does not comport with what was advertised, is defective, or in some cases was not ordered at all. The customer will therefore request that the charge incurred be "charged back" and the funds for the good or service be returned to the customer. These chargebacks are initiated by the bank of the customer who initiated the chargeback, and that chargeback is then sent to Pathward for adjudication of whether the chargeback is legitimate or an instance of "friendly fraud." A "friendly fraud" is where the customer gets the product delivered to them but elects to chargeback anyway with the goal of not paying for the good or service they received. Regrettably, "friendly fraud" is also a regular occurrence in the payment-processing ecosystem.

60.     In a normal chargeback process, the amount of the chargeback would be taken from the merchant while the chargeback is adjudicated, and the merchant would have a chance to dispute the chargeback's legitimacy. If the merchant wins the dispute, the "charged-back" amount is remitted back to the merchant.

61.     On information and belief, the Merchant Financial Services Agreement between Pathward and PNX required PNX to produce to Pathward a "Monthly Scorecard" that included all chargebacks and credits to individual merchants on a monthly basis.

62.     On information and belief, PNX and Pathward did in fact exchange such Monthly Scorecards or otherwise had the information available to do so.

63.     Despite their obligation to notify Plaintiffs of chargebacks made against them, Pathward and PNX failed to do so.

64.     They instead misrepresented the number and frequency of chargebacks, either negligently or intentionally.

65.     The failure to notify Plaintiffs of the chargebacks significantly harmed them by preventing Plaintiffs from disputing the chargebacks.

66.     In Plaintiffs' experience, they generally win 70 percent of all chargeback disputes. Thus, the failure to notify Plaintiffs of chargebacks resulted in significant financial losses for Plaintiffs.

67.     Worse still, on information and belief, not only were PNX and Pathward *not* notifying Plaintiffs of all the chargebacks initiated against them, but they were instead disputing those chargebacks on their own—but without Plaintiffs' knowledge.

68.     For those that were adjudicated in Plaintiffs' favor, PNX and Pathward would keep the chargeback money for themselves.

69.     PNX and Pathward intentionally concealed, omitted, and misrepresented this information when dealing with Plaintiffs, falsely stating that they either could not obtain the information or were trying to reconcile chargebacks for Plaintiffs when they in fact had the information available to them at all times, including via the Monthly Scorecards and other similar data and reports.

70.     For example, on June 10, 2022, Plaintiffs asked PNX CEO Trent Voigt to provide a chargeback report. Voigt responded, promising to provide the report but failing to do so or otherwise providing a report that was false and misleading and contained fraudulent omissions.

71.     On January 10, 2023, Plaintiffs again wrote to PNX CEO Trent Voigt and PNX CFO Michael Gage requesting a reconciliation of all chargebacks and an accounting of where Plaintiffs were being credited for the chargeback disputes that they won.

72.     CFO Gage responded, claiming that he was "working on a report"; when, in fact, no such report was in progress and/or PNX and Pathward possessed the requested data but were intentionally mispresenting, concealing, or omitting its availability.

73.     This not only harmed Plaintiffs, but wrongly enriched PNX and Pathward, who were secretly obtaining and keeping chargeback funds that rightly belonged to Plaintiffs, at Plaintiffs'

expense.

74.     Additionally, for those chargebacks that Plaintiffs were able to dispute and win, PNX and Pathward intentionally or negligently failed to credit Plaintiffs with those funds, which rightfully belonged to Plaintiffs.

75.     When Plaintiffs questioned Defendants about the location of the funds for the successful chargeback disputes, Defendants either ignored Plaintiffs' requests or otherwise misrepresented to Plaintiffs that Defendants were working on retrieving the relevant data.

76.     For example, on January 24, 2023, Plaintiffs again wrote PNX, asking how Plaintiffs were being credited for chargeback wins.   PNX again implied PNX and Pathward did not have the data when, in fact, they did.

77.     Plaintiffs made multiple requests for this information throughout 2023 and each time were met with intentional misrepresentations, obfuscation, delay, and evasiveness despite both PNX and Pathward having the information readily available.

78.     On October 13, 2023, Plaintiffs again wrote to PNX's CFO Michael Gage and its CEO Trent Voigt, asking for a historic reconciliation of all of Plaintiffs' chargeback wins and the location of the associated funds from the successful chargebacks.  Plaintiffs noted that they had asked for this information at least 4 or 5 times over many months and received no substantive response from PNX or Pathward.

79.     PNX's Gage finally responded to Plaintiffs' request, again falsely claiming that PNX was working on obtaining the data for a report, when, in fact, PNX had the relevant data all along but was intentionally or negligently withholding it from Plaintiffs.

80.     Further, when PNX did produce a report in response to Plaintiffs' request for a reconciliation, it was incomplete (showing purported chargeback wins for only two months), did not provide data for where the funds for the chargeback returns had gone despite PNX and Pathward

having this data, and further contained intentional or negligent misrepresentations about the true number of chargeback wins that should have been credited to Plaintiffs.

81.    On January 31, 2024, Plaintiffs wrote to PNX's CEO, informing him that they still had not received a proper reconciliation of where the funds for chargeback returns went when Plaintiffs won chargeback disputes.  PNX and Pathward never provided such a reconciliation, claiming, among other things, that they could not do so or did not have the relevant data; when, in fact, PNX and Pathward had the relevant data but misrepresented or concealed its existence from Plaintiffs, despite having a duty to provide it.

82.    On information and belief, PNX and Pathward have amassed, conservatively, over $10 million in chargebacks that are owed to Plaintiffs.

### *Defendants' RDR Fee Fraud and Related Misconduct*

83.    PNX and Pathward also began charging Plaintiffs' for Rapid Dispute Resolution ("RDR") fees, even though they: were not authorized to do so; never disclosed to Plaintiffs that they would charge such fees; never obtained Plaintiffs' agreement to charge such fees; provided no service in relation to the RDRs that would justify such fees; and even though such fees are not commonly charged in the payments industry.

84.    RDR is a pre-dispute resolution system built on the Visa network and Verifi platform. This solution, provided to sellers and resellers by Verifi, offers the ability to resolve disputes and avoid the dispute process (i.e. arbitration) at an early stage, preventing a chargeback and summarily resolving a dispute.

85.    PNX and Pathward do not incur any expenses related to RDRs.

86.    In fact, Visa rules strictly prohibit fees for RDR-resolved transactions because of the streamlined nature of the process and its significant difference in administrative work as compared to a "traditional" dispute/arbitration.

87.     PNX and Pathward nevertheless charged Plaintiffs millions of dollars of RDR fees, unilaterally imposing a $15-per-transaction RDR fee on a voluminous number of Plaintiffs' transactions.

88.     These fees were reflected (among other places) in monthly account statements that intentionally or negligently misrepresented the fees that Plaintiffs owed.

89.     For example, PNX, via its CFO Michael Gage and with knowledge of its CEO Trent Voigt (who was included on the relevant communications), sent Plaintiffs monthly account statements on September 26, 2022, which contained millions of dollars in fees, including false and fraudulent RDR fees, among others.

90.     For another example, PNX, on December 6, 2022, again sent (via CFO Gage) Plaintiffs monthly account statements, which contained millions of dollars in fees, including false and fraudulent RDR fees, among others.

91.     On information and belief, PNX sent Plaintiffs similar account statements containing false and fraudulent RDR fees on dates throughout 2022, 2023, and 2024, including but not limited to the dates listed above and January 10, 2023; February 16, 2023; April 5, 2023; April 25, 2023; May 30, 2023; June 20, 2023; August 17, 2023; October 12, 2023; October 17, 2023; November 14, 2023; December 14, 2023; January 17, 2024; February 14, 2024; March 22, 2024; May 10, 2024; and May 15, 2024.

92.     During pre-enrollment discussions, PNX and Pathward affirmatively misrepresented or otherwise failed to adequately disclose their intention to charge RDR fees, particularly since any such fee should have been prohibited under the Visa Card Brand Rules. Indeed, because such fees are not permitted, Plaintiffs justifiably believed that no such fees would be charged at all.

93.     Additionally, PNX and Pathward failed to disclose the frequency and number of transactions for which they would charge RDR fees, which not only induced Plaintiffs to enroll in

PNX's and Pathward's services, but further damaged Plaintiffs by charging them fees they should not have been charged.

94.     Compounding matters, PNX and Pathward were assessing RDR fees on transactions for which there was no RDR at all—thereby making an affirmative misrepresentation to Plaintiffs about the underlying existence of RDR for a particular transaction.

95.     These affirmative misrepresentations were made, among other places, in the monthly account statements that PNX and Pathward sent to Plaintiffs.

96.     Further, PNX and Pathward, when questioned by Plaintiffs about their charging of the RDR fees, attempted to recharacterize the fees as "service" or "retrieval" fees in an effort to hide, obfuscate, and conceal the RDR fees they charged.

97.     In short, PNX and Pathward intentionally charged Plaintiffs millions of dollars in fake, hidden, and fraudulent fees, or otherwise negligently misrepresented that Plaintiffs owed fees on transactions for which they owed no fees.

*Defendants' Negligence*

98.     Pathward and PNX owed duties to Plaintiffs, including a duty to perform their payment-processing services consistent with ordinary care.

99.     Pathward breached these duties to Plaintiffs by, among other things, failing to properly monitor PNX.

100.     Such monitoring is not only customary in the industry, but is also required under the Association Rules.

101.     As Pathward and PNX hold themselves out as payment processors for the various Card Brands, they represented to Plaintiffs and others that they would be bound by and follow the duties set forth in the Association Rules.

102.     The Association Rules required Pathward to adequately monitor PNX, to control it,

and to accept responsibility for its conduct.

103.    Pathward failed to properly monitor PNX, which allowed PNX to charge Plaintiffs fraudulent, excessive, and baseless fees.

104.    Pathward failed to review PNX's fees in advance, which allowed PNX to charge Plaintiffs fraudulent, excessive, and baseless fees.

105.    Further, Pathward failed to ensure that PNX was properly notifying Plaintiffs of chargebacks, which resulted in Plaintiffs being unaware of chargebacks and thus unable to dispute them.

106.    This injured Plaintiffs, since they generally won the majority of their chargeback disputes.

107.    Further, in those instances when Plaintiffs were aware of chargebacks and were able to dispute and win chargeback reversals, Pathward and PNX failed to remit the chargeback returns to Plaintiffs.

108.    Moreover, Pathward likewise failed to adequately monitor PNX by permitting PNX to fraudulently obtain chargeback funds that rightfully belong to Plaintiffs.

109.    Pathward also failed to monitor PNX's performance with regard to preventing Card Brand fees and fines against Plaintiffs.

110.    Due to this failure to monitor, Plaintiffs suffered unnecessary fines and fees, which financially damaged them.

111.    Payment processors have a duty to notify merchants of chargebacks, as such notification is standard in the industry.

112.    PNX and Pathward breached their duties to Plaintiffs by failing to notify them of chargebacks, which caused damage to Plaintiffs by preventing them from disputing millions of dollars' worth of chargebacks, which resulted in substantial financial losses to Plaintiffs given their

high rate of success in disputing chargebacks.

113.    Payment processors also have a duty to ensure they are properly assessing fees against merchants.

114.    PNX and Pathward breached this duty by negligently assessing legally and factually baseless fees against Plaintiffs, which caused Plaintiffs to incur millions of dollars of fees that should not have incurred.

115.    Payment processors also have a duty to assist merchants in avoiding needless fees and fines from the Card Brands.

116.    PNX and Pathward breached this duty by negligently providing payment processing services to Plaintiffs, which resulted in the Card Brands assessing substantial fees and fines against Plaintiffs.

117.    This damaged Plaintiffs but could have been wholly prevented had PNX and Pathward provided competent payment-processing services consistent with industry standards.

***

118.    PNX's and Pathward's fraudulent, intentional, negligent, and otherwise tortious conduct, described herein, has directly and proximately caused Plaintiffs' substantial damages, including (i) all costs incurred from enrolling in PNX's and Pathward's services, which Plaintiffs would never had done but-for PNX's and Pathward's fraudulent inducement; (ii) fees assessed by Card Brands that should never have been assessed had PNX and Pathward performed competently and consistent with their promises; (iii) the lost opportunity to dispute chargebacks that PNX and Pathward failed to notify Plaintiffs of; (iv) the chargebacks that PNX and Pathward fraudulently disputed on their own without notifying Plaintiffs, for which PNX and Pathward have illegally retained funds when they won said disputes; (v) the funds from the chargeback disputes that Plaintiffs did win, which PNX and Pathward have either intentionally withheld from Plaintiffs or have

- 16 -

negligently misplaced (but which in all events have not been remitted to Plaintiffs); and (vi) all fees that PNX and Pathward charged Plaintiffs, including those that could not have been legally charged and those that were fraudulently charged, which include but are not limited to the RDR fees and chargeback fees and amounts related to such chargebacks described above.

## FIRST CAUSE OF ACTION

### Fraudulent Inducement Against PNX and Pathward

119.    Plaintiffs hereby repeat, re-allege, and incorporate by reference herein as though set forth in full each and every allegation contained in this Complaint.

120.    PNX and Pathward intentionally or with reckless disregard for the truth mispresented, wrongly implied, and/or concealed from Plaintiffs PNX's and Pathward's true abilities and intentions with regard to the payment-processing services they offered, including intentional misrepresentations regarding (among other things): PNX's and Pathward's intentions to comply with the Association Rules, their ability to limit Plaintiffs' exposure to certain fees and fines, their intentions and ability to notify Plaintiffs of chargebacks, as well as PNX's and Pathward's intention to charge Plaintiffs' certain fees, including RDR fees.

121.    PNX and Pathward knew that their misrepresentations, wrongful implications, and concealments regarding their abilities and intentions were false.

122.    PNX and Pathward undertook this misconduct to induce Plaintiffs to enroll in PNX and Pathward's services.

123.    Had PNX and Pathward been truthful about their abilities, intentions, and fees, Plaintiffs would never have enrolled in PNX's and Pathward's services, thus making the misrepresentations, wrongful implications, and concealments material.

124.    Plaintiffs justifiably relied on PNX's and Pathward's representations.

125.    Plaintiffs have been injured by PNX's and Pathward's fraudulent inducement.

126.     Defendants are independently and separately directly liable for their fraudulent inducement.

127.     In the alternative or in addition, because PNX is Pathward's actual or apparent agent, Pathward is vicariously liable for PNX's fraudulent inducement of Plaintiffs.

## SECOND CAUSE OF ACTION
## Fraud Against PNX and Pathward

128.     Plaintiffs hereby repeat, re-allege, and incorporate by reference herein as though set forth in full each and every allegation contained in the Complaint.

129.     PNX and Pathward were obligated to notify Plaintiffs of all chargebacks initiated against them.

130.     PNX and Pathward concealed the existence of chargebacks from Plaintiffs or otherwise mispresented the true number and existence of chargebacks.

131.     PNX and Pathward intentionally misrepresented and concealed the existence and number of chargebacks while knowing that Plaintiffs were depending on them for notice of the same.

132.     PNX and Pathward also intentionally misrepresented and concealed the existence and location of funds or credits from the chargeback disputes that Plaintiffs won.

133.     Based on PNX's and Pathward's representations regarding their obligation to notify Plaintiffs of chargebacks, Plaintiffs justifiably relied on PNX's and Pathward's stated obligation to notify Plaintiffs about chargebacks.

134.     Plaintiffs also relied on PNX and Pathward to inform them of funds Plaintiffs had obtained from successful chargeback disputes and further relied on PNX and Pathward to maintain those funds.

135.     PNX's and Pathward's intentional misrepresentations and concealment of chargebacks injured Plaintiffs by preventing Plaintiffs from disputing chargebacks, which disputes

Plaintiffs frequently won.

136. PNX's and Pathward's intentional misrepresentations and concealment of the location and existence of successful-chargeback funds injured Plaintiffs by depriving them of their money.

137. Further, PNX and Pathward misrepresented that they had authority to dispute chargebacks on Plaintiffs' behalf, when, in fact, PNX and Pathward were concealing the existence of said chargebacks from Plaintiffs and were further misrepresenting that they would return the chargeback to Plaintiffs.

138. Instead, when PNX and Pathward secretly disputed Plaintiffs' chargebacks and won, they simply pocketed the money that rightfully belonged to Plaintiffs.

139. This too injured Plaintiffs, by allowing PNX and Pathward to obtain funds that should have been remitted to Plaintiffs, but-for PNX's and Pathward's misrepresentations.

140. Further, PNX and Pathward misrepresented the fees that would assess Plaintiffs as well as the validity and existence of the fees they assessed Plaintiffs.

141. Specifically, PNX and Pathward misrepresented that they would assess only listed and identified fees for which they provided a service and legitimately earned when, in fact, they assessed RDR and other hidden, buried, fake, and non-listed, non-disclosed, and non-identified fees, and further misrepresented that RDR fees had been incurred on certain transactions when, in fact, those transactions were not subject to RDR at all.

142. PNX and Pathward knew that they were not entitled to assess RDR fees, and that said transactions should not have been assessed RDR fees, but assessed them anyway.

143. Plaintiffs justifiably relied on PNX's and Pathward's representations regarding the assessment of RDR fees and were damaged thereby when they were assessed RDR fees and when they were assessed RDR fees on transactions that were not subject to RDR.

144. Defendants are independently and separately directly liable for their fraudulent

conduct.

145.    In the alternative or in addition, because PNX is Pathward's actual or apparent agent, Pathward is vicariously liable for PNX's fraudulent conduct.

### THIRD CAUSE OF ACTION

### Negligent Misrepresentation Against PNX and Pathward

146.    Plaintiffs hereby repeat, re-allege, and incorporate by reference herein as though set forth in full each and every allegation contained in the Complaint.

147.    PNX and Pathward, during their business, profession, employment, or otherwise during transactions in which they had a pecuniary interest, supplied false information to Plaintiffs.

148.    Specifically, PNX and Pathward supplied Plaintiffs with false information regarding (but not limited to) the existence and number of chargebacks; the existence and number of various fees, including RDR fees; the existence and location of funds that belonged to Plaintiffs for disputed chargebacks that Plaintiffs had won or should have won.

149.    PNX and Pathward failed to exercise reasonable care or competence when supplying this false information, which damaged Plaintiffs as described herein.

150.    Defendants are independently and separately directly liable for their negligent misrepresentation.

151.    In the alternative or in addition, because PNX is Pathward's actual or apparent agent, Pathward is vicariously liable for PNX's negligent misrepresentation.

### FOURTH CAUSE OF ACTION

### Conversion Against PNX and Pathward

152.    Plaintiffs hereby repeat, re-allege, and incorporate by reference herein as though set forth in full each and every allegation contained in the Complaint.

153.    Plaintiffs were the owners and entitled to immediate possession of certain property,

namely, money, and were deprived of that possession by unauthorized acts of PNX and Pathward, and by PNX's and Pathward's exercise of dominion over the property inconsistent with the right of possession of Plaintiffs.

154.    Specifically, Plaintiffs were the owners and entitled to immediate possession of the certain money, including (but not limited to) Plaintiffs' money held in third-party bank accounts as well as money held in bank accounts at Pathward for benefit of Plaintiffs.

155.    Plaintiffs were deprived of that possession by PNX's and Pathward's unauthorized taking of this money, including (but not limited to) PNX's and Pathward's transferring of the money to their own accounts for: hidden, buried, and unauthorized fees, including the RDR fees described herein; chargebacks that PNX and Pathward failed to disclose to Plaintiffs timely or at all, and failed to give Plaintiffs a meaningful opportunity to contest; chargebacks that PNX and Pathward, on information and belief, contested on their own and simply kept for themselves when they prevailed; and chargebacks that Plaintiffs won but for which PNX and Pathward never credited their accounts and for which PNX and Pathward retained the chargeback returns that properly to Plaintiffs.

156.    All of the above fees and chargebacks are traceable to specifically identifiable transactions for which Defendants had a specific obligation to deliver the money in question to Plaintiffs.

157.    Defendants are independently and separately directly liable for their conversion.

158.    In the alternative or in addition, because PNX is Pathward's actual or apparent agent, Pathward is vicariously liable for PNX's conversion.

## FIFTH CAUSE OF ACTION

### Negligence Against PNX and Pathward

159.    Plaintiffs hereby repeat, re-allege, and incorporate by reference herein as though set forth in full each and every allegation contained in the Complaint.

160. PNX and Pathward owed Plaintiffs a duty to perform with the ordinary standard of care in the payments industry.

161. Pursuant to those standards, payment processors and acquiring banks must notify merchants of chargebacks to give merchants the opportunity to dispute the chargebacks.

162. PNX and Pathward breached this duty by failing to notify Plaintiffs about thousands of chargebacks, which resulted in Plaintiffs losing the ability to dispute the chargeback.

163. Plaintiffs, as further alleged herein, most often prevailed in their chargeback disputes.

164. PNX's and Pathward's failure notify Plaintiffs' of chargebacks thereby injured Plaintiffs, preventing from disputing millions of dollars' worth of chargebacks for which Plaintiffs would have prevailed.

165. Payment processors further owe their customers a duty to assist them in avoiding unnecessary fees and fines.

166. PNX and Pathward breached this duty, which resulted in Plaintiffs being subjected to needless fees and fines and Plaintiffs were thus damaged thereby.

167. PNX and Pathward likewise breached their duties to Plaintiffs by failing to account for funds that Plaintiffs should have received from their chargeback wins.

168. Despite Defendants' general failure to notify Plaintiffs of all chargebacks, Plaintiffs were able to identify and successfully dispute some chargebacks.

169. Plaintiffs should have received credit to their accounts for these chargeback wins but they did not.

170. Defendants could not explain where these funds went and have either intentionally kept them or otherwise negligently misplaced or lost them, harming Plaintiffs either way.

171. PNX and Pathward likewise breached their duties to Plaintiffs by assessing fees against Plaintiffs that had no basis in law or in fact, including PNX's and Pathward's assessment of

RDR fees at all and for transactions that were not subject to RDR.

172.    This breach damaged Plaintiffs by causing them to incur fees that they should not have and would not have incurred but-for PNX's and Pathward's negligence.

173.    Pathward likewise breached its duties to Plaintiffs by failing to properly monitor and control PNX.

174.    Such monitoring and control is required by the Association Rules and is also common in industry practice.

175.    Pathward represented that it would control and monitor PNX, and would review PNX's fees in advance, and such was expected of Pathward based on those representations and on the Association Rules and industry practice.

176.    Pathward did not control or monitor PNX, or review its fees in advance, which allowed PNX to charge Plaintiffs exorbitant—and often fraudulent—fees; resulted in Plaintiffs not being notified of chargebacks to dispute; and otherwise enabled PNX to defraud Plaintiffs as described herein.

177.    Pathward's failure to control and monitor PNX also resulted in Plaintiffs accruing unnecessary fines and fees.

178.    The above actions directly and proximately caused Plaintiffs' injuries.

179.    Defendants are independently and separately directly liable for their negligence.

180.    In the alternative or in addition, because PNX is Pathward's actual or apparent agent, Pathward is vicariously liable for PNX's negligence.

### SIXTH CAUSE OF ACTION

### Accounting Against PNX and Pathward

181.    Plaintiffs hereby repeat, re-allege, and incorporate by reference herein as though set forth in full each and every allegation contained in the Complaint.

182.     PNX and Pathward, as payment processors, occupy a position of trust and confidence vis-à-vis Plaintiffs.  This is doubly so for Pathward, which is a nationally chartered bank.

183.     In this relationship, Plaintiffs have to trust that PNX and Pathward are accurately reporting transactions, including which transactions are subject to fees and chargebacks.

184.     Through this relationship, PNX and Pathward have obtained money that belongs to Plaintiffs.

185.     On information and belief, PNX and Pathward currently control substantial sums of the money owed to Plaintiffs.

186.     PNX and Pathward obtained Plaintiffs' money via wrongful conduct as described herein.

187.     Accordingly, PNX and Pathward should account for the money they owe Plaintiffs and pay to Plaintiffs the same.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment in favor of Plaintiffs and against Defendants, awarding Plaintiffs:

a)     Compensatory damages, including without limitation, incidental and consequential damages, in excess of $12,000,000, and interest thereon, in an amount according to proof at trial;

b)     Pre- and post-judgment interest at the maximum legal rate;

c)     Punitive damages;

d)     Attorneys' fees and costs;

e)     Full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendant PNX and Pathward as a result of their fraud, tortious and inequitable misconduct, and their negligence;

f)     An accounting of all funds owed to Plaintiffs; and

g)      Such other and further relief as the Court may deem proper.


Dated: August 2, 2024                    Respectfully submitted,

                                         */s/   Benjamin C. Glassman*
                                         Benjamin C. Glassman (0077466)
                                             Trial Counsel
                                         G. Luke Burton (0098146)
                                         SQUIRE PATTON BOGGS (US) LLP
                                         201 E. Fourth St., Suite 1900
                                         Cincinnati, Ohio 45202
                                         Telephone: 513 361 1200
                                         Facsimile:  513 361 1201
                                         benjamin.glassman@squirepb.com
                                         luke.burton@squirepb.com

                                         Vipal Patel (0099850)
                                         SQUIRE PATTON BOGGS (US) LLP
                                         2000 Huntington Center
                                         41 South High Street
                                         Columbus, Ohio 43215
                                         Telephone: 614 365 2700
                                         Facsimile: 614 365 2499
                                         vipal.patel@squirepb.com

                                         James C. Huber (*pro hac vice* forthcoming)
                                         Bryce M. Van De Moere (*pro hac vice* forthcoming)
                                         Global Legal Law Firm
                                         322 Encinitas Boulevard
                                         Suite 200
                                         Encinitas, CA 92024
                                         Telephone: 888-846-8901

                                         Attorneys for Plaintiffs ERI BRANDS, LLC and
                                         ROCKET SYSTEMS, INC.