# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION – CINCINNATI

| | | |
|---|---|---|
| ERI BRANDS, LLC, et al., | : | Case No. 1:24-cv-415 |
| | : | |
| Plaintiffs, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| PAYNETWORX, LLC, et al., | : | |
| | : | |
| Defendants. | : | |

---

## ORDER AND OPINION

---

This matter is before the Court on Defendants Pathward and PayNetWorx, LLC's Motions to Dismiss Plaintiffs' Complaint. (Docs. 20, 22.) Plaintiffs filed a Response in Opposition (Doc. 24) to both Defendants' Motions, and Defendants each filed a Reply in Support (Docs. 25, 26). Thus, this matter is ripe for review. For the following reasons, Defendant Pathward's Motion to Dismiss (Doc. 20) is **GRANTED IN PART AND DENIED IN PART**. Defendant PayNetWorx, LLC's Motion to Dismiss (Doc. 22) is **GRANTED IN PART AND DENIED IN PART**.

## FACTS AS ALLEGED

### I.    The Parties

Plaintiffs ERI Brands, LLC, ("ERI") and Rocket Systems, Inc. ("Rocket") are online merchants. (Compl., Doc. 1, ¶¶ 1, 3.) ERI is a Florida company with its principal place of business in Cincinnati, Ohio, while Rocket is a Wyoming corporation with its principal place of business also in Cincinnati, Ohio. (*Id.*) Defendant PayNetWorx, LLC, ("PNX") is

a Texas company that provides payment processing services to merchants. (*Id.* ¶¶ 5, 26.) Defendant Pathward National Association and Defendant Pathward Financial, Inc. are collectively known throughout this proceeding as "Pathward." (*Id.* ¶14.) Pathward is a member bank, or acquiring bank, of the four major credit card brands (Visa, Mastercard, American Express, and Discover) ("Card Brands"), which allows Pathward to process credit and debit card purchases from merchants. (*Id.* ¶ 21.) These Card Brands have Association Rules specific to each brand, and the payment industry relies on these publicly available rules. (*Id.* ¶ 23.) Pathward contracts with third-party organizations such as PNX to provide payment processing services to merchants. (*Id.* ¶ 26.)

## II.    Alleged Misconduct

Plaintiffs allege that Defendants engaged in fraud in two ways. First, Plaintiffs claim that Defendants were secretly recouping "chargebacks," which occur when customers dispute charges on their debit or credit card and those charges are then taken from the merchant's account pending resolution of the dispute. (Compl., Doc. 1, ¶¶ 57-82.) When a disputed charge is resolved in the customer's favor, the merchant does not recoup the funds. (*Id.* ¶ 59.) But when a disputed charge is settled in favor of the merchant, the merchant does recoup those funds. (*Id.*) Acquiring banks like Pathward, along with their service providers, like PNX, have access to chargeback information and control the funds involved in those disputes. (*Id.* ¶¶ 59-64, 67-69.) Plaintiffs claim that Defendants knew certain chargebacks were resolved in Plaintiffs' favor but nevertheless kept the funds. (*Id.* ¶¶ 67-69.) Plaintiffs assert that Defendants intentionally concealed this conduct from them. (*Id.* ¶¶ 69-82.)

2

Plaintiffs also allege that Defendants charged them fees for services that Defendants did not provide and costs that Plaintiffs did not incur. (Compl., Doc. 1, ¶¶ 83-97.) One such example is the "Rapid Dispute Resolution" ("RDR") fee. (*Id.* ¶¶ 83-85.) Plaintiffs claim Defendants charged RDR fees despite never disclosing such fees to Plaintiffs, obtaining Plaintiffs' permission, or providing services to justify such fees. (*Id.*) Plaintiffs bring claims of negligent misrepresentation, negligence, fraudulent inducement, fraud, conversion, and accounting against Defendants. (*Id.* ¶¶ 119-87.)

**PROCEDURAL POSTURE**

On August 2, 2024, Plaintiffs filed their Complaint in this Court. (Compl., Doc. 1.) On September 19, 2024, Pathward filed its Motion to Dismiss (Doc. 20) and on October 3, 2024, PNX filed its Motion to Dismiss (Doc. 22), joining Pathward's Motion and providing an independent argument for dismissal. Plaintiffs consolidated their responses to both Motions into one Response in Opposition (Doc. 24). Pathward filed a Reply in Support (Doc. 25) and PNX joined Pathward in its Reply (Doc. 26). As PNX has joined Pathward in its arguments, the Court will refer to the arguments made in Pathward's Motion as Defendants' arguments collectively.

**LAW**

A Rule 12(b)(6) motion to dismiss for failure to state a claim tests a plaintiff's cause of action as stated in a complaint. *Golden v. City of Columbus*, 404 F.3d 950, 958 (6th Cir. 2005); Fed. R. Civ. P. 12(b)(6). A claim for relief must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Courts accept all factual allegations as true and construe them in the light most favorable to the plaintiff. *Doe v. Baum*, 903 F.3d 575, 581

3

(6th Cir. 2018). That said, courts are not bound to do the same for a complaint's legal conclusions. *Twombly*, 550 U.S. at 555. And, when a complaint contains sufficient facts to satisfy the elements of an affirmative defense put forth by a defendant, courts may grant dismissal on that basis. *Est. of Barney v. PNC Bank, Nat. Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).

Meanwhile, Rule 9(b) requires a higher standard for a plaintiff who alleges fraud in the complaint. Fed. R. Civ. P. 9(b). In alleging fraud, a plaintiff must state "with particularity the circumstances constituting fraud." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988). This higher standard, however, "does not require omniscience," but rather "requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Id.* at 680. This is especially true when "there has been no discovery," and the facts underlying the claims of fraud "are within the defendant's control." *Id.*

## ANALYSIS

In support of their Motions, Defendants rely on PNX's Merchant Application, which both Plaintiffs executed, and PNX's Terms and Conditions ("Terms"), to which the Merchant Applications are subject. (Motions, Docs. 20, 22; *see also* Merchant Application for ERI, Doc. 20-1; Merchant Application for Rocket, Doc. 20-2; PNX's Terms, Doc. 20-3.) Plaintiffs, meanwhile, argue that these documents are improperly before the Court at the motion to dismiss stage, as they are outside the pleadings. Since the use of these contracts affects both the choice of law and the analysis of Defendants' Motions, the Court will first determine whether it can consider these contracts. The Court will then analyze which

4

state's law applies. And finally, the Court will move onto the merits of Defendants' Motions.

### I. Use of the Contracts

In their Motions, Defendants reference both the Merchant Applications signed by Plaintiffs and PNX's Terms, which the Merchant Applications incorporate. (Pathward's Motion, Doc. 20, Pg. ID 86; PNX's Motion, Doc. 22-1, Pg. ID 179.) But, Plaintiffs argue that the Court should not consider these contracts at this stage for two reasons. First, Plaintiffs state that the contracts are "outside the pleadings." (Response, Doc. 24, Pg. ID 196.) Generally, as Plaintiffs point out, a court can only consider the materials which are properly before it when deciding on a motion to dismiss. (*Id.*; *see also Diei v. Boyd*, 116 F.4th 637, 643 (6th Cir. 2024)). "[A] Rule 12(b)(6) motion should be decided solely on the complaint." *Diei*, 116 F.4th at 643. But, there is an exception to this general rule: a court may review "exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Id.* (cleaned up). When determining whether the documents are central to the complaint's claims, "it must also be clear that there exists no material disputed issues of fact regarding the relevance of the documents." *Id.* at 644 (quotation omitted). Further, "a district court should not rely on documents at the motion-to-dismiss stage if their authenticity is disputed." *Moyer v. Gov't Emp. Ins. Co.*, 114 F.4th 563, 568 (6th Cir. 2024).

Defendants argue that the Complaint refers to the Merchant Applications (and thus the incorporated Terms) where Plaintiffs claim that "[o]n or about March 21, 2023, Defendants PNX and Pathward induced Rocket to enroll in payment-processing services

with Defendants." (Reply, Doc. 25, Pg. ID 212.) As Defendants point out, the date on Rocket's executed Merchant Application is March 21, 2023. (*Id.*) Defendants state that Plaintiffs continue to allege this enrollment; for example, Plaintiffs claim again that ERI and Rocket enrolled in Defendants' payment-processing systems "on March 23-24, 2022, and March 21, 2023, respectively." (*Id.*; *see also* Compl., Doc. 1, ¶ 46.) ERI's execution of the Merchant Application was March 15, 2022, which is not the same date Plaintiffs cite in their Complaint, but the dates are close. (ERI Merchant Application, Doc. 20-1.) The Court agrees, therefore, that Plaintiffs refer to these contracts in the Complaint.

However, the Court must now determine whether the contracts are central to Plaintiffs' claims in order to consider them with Defendants' Motions. Plaintiffs make claims of fraud, fraudulent inducement, negligent misrepresentation, conversion, negligence, and accounting. (Compl., Doc. 1.) All of these are tort, not contract claims. Nevertheless, Defendants contend that Plaintiffs' and Defendants' relationship, which led to the alleged tortious acts, arose from the contracts. (Motion, Doc. 20, Pg. ID 86, n.3; Reply, Doc. 25, Pg. ID 214.)

The Court recognizes that, but for the contracts, Defendants and Plaintiffs would not have transacted business together and the alleged fraudulent or negligent acts would not have occurred. But, this fact—in and of itself—does not make the contracts "central to the claims" of Plaintiffs' Complaint. As Plaintiffs point out, they "do not rely on the documents for any of their claims," nor are their tort claims "contingent on any alleged terms of the purported agreements between the parties." (Response, Doc. 24, Pg. ID 198.) Defendants use these contracts to provide justification or refutation for their alleged

conduct. (Motion, Doc. 20.) These contracts are indeed integral to Defendants' affirmative defenses, but they are not integral to Plaintiffs' claims. *See Oppenheimer v. Mt. States Health All.*, No. 2:19-CV-189, 2020 WL 1867235, at *2 (E.D. Tenn. Apr. 14, 2020) ("In order for the Court to consider a document that is not attached to the complaint, that document must be integral to the Plaintiff's claim itself, not to Defendants' affirmative defense to that claim."). Thus, these documents are not properly before the Court at this stage of litigation. The Court will not consider them in its analysis of Defendants' Motions to Dismiss.

Plaintiffs also argue that the documents should be excluded because "their authenticity, validity, and relevance are in dispute." (Response, Doc. 22, Pg. ID 198.) As the Court has already determined that the documents are not central to Plaintiffs' claims, it will not analyze Plaintiffs' additional argument for their exclusion.

## II.    Choice of Law

"It is well-settled that a federal court sitting in diversity must apply the choice of law rules of the state in which it sits." *Charash v. Oberlin Coll.*, 14 F.3d 291, 296 (6th Cir. 1999). Ohio's choice-of-law rules are governed by the Restatement (Second) of Conflict of Laws. *Id.* But, to apply a foreign jurisdiction's laws, the party must first show that a conflict of the applicable law exists; otherwise, the laws of the forum state apply. *Mulch Mfg., Inc. v. Advanced Polymer Sols., LLC*, 947 F. Supp.2d 841, 855 (S.D. Ohio 2013). Defendants argue that the choice of law provision in PNX's Terms and Conditions ("Terms") provides that Texas law governs this matter. (Motion, Doc. 20, Pg. ID 88; *see also* Terms and Conditions, Doc. 20-3, Pg. ID 171.) Plaintiffs disagree and contend instead

7

that Ohio law applies. (Response, Doc. 24, Pg. ID 194.) Plaintiffs argue that a conflict of law does not exist, as PNX's Terms, which contains the choice-of-law provision, is not properly before the Court at this stage in the litigation. (Response, Doc. 24, Pg. ID 194.) Further, in Plaintiffs' estimation, the provision only applies to disputes over the written agreement between the parties, not "any dispute," as Defendants claim. (*Id.*)

The Court has already determined that it cannot consider the Merchant Applications or Terms in its analysis of the Motions to Dismiss. But, assuming the Court examined the Terms' choice-of-law provision, the provision would still not apply. Plaintiffs are correct that Defendants misstated the Terms, which state that the "agreement shall be governed and construed in accordance with the laws of the State of Texas." (Terms, Doc. 20-3, Pg. ID 171; *see also* Response, Doc. 24, Pg. ID 195.) The provision, therefore, does not extend to "any dispute" between Plaintiffs and Defendants, but only disputes specifically about the contracts. Defendants cite several cases where contractual choice of law provisions extend to tort claims. (Reply, Doc. 25, Pg. ID 215.) But, "the Sixth Circuit has held repeatedly that contractual choice of law provisions apply to tort claims that are closely related to the contractual relationship, as opposed to those that are only tangentially related." *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, 513 F. Supp. 3d 801, 805 (N.D. Ohio 2021) (collecting cases). As the Court has established that the contracts are not central to Plaintiffs' claims, the choice-of-law provision does not apply here. Absent any evidence of a conflict of laws, Defendants have failed to meet their burden to apply Texas law. *Mulch Mfg., Inc.*, 947 F. Supp.2d at 855. Rather, by default, the laws of Ohio, the forum state, apply. *Id.*

8

### III.     Pathward's Motion to Dismiss

In its Motion, Pathward argues for dismissal on several grounds: (1) Plaintiffs' claims are barred by the economic loss rule; (2) Plaintiffs failed to plead their fraudulent inducement and fraud claims with particularity; (3) Pathward has no obligation to provide Plaintiffs with an accounting; (4) Pathward cannot be held vicariously liable for PNX's alleged conduct; and (5) the terms of the Merchant Application bar Plaintiffs' claims for compensatory and punitive damages, as well as their claim for disgorgement of profits. (Motion, Doc. 20.) The Court will consider each argument in turn.

#### a.     Economic Loss Rule

Pathward asserts that Plaintiffs' tort claims for fraud, negligence, negligent misrepresentation, and conversion are barred by the economic loss rule. (Motion, Doc. 20, Pg. ID 90.) Under Texas law, this rule bars recovery in tort "when the loss complained of is the subject matter of a contract." (*Id.* (citing *ICI Constr., Inc. v. Hufcor, Inc.*, No. H-22-3347, 2023 WL 2392738, at *19 (S.D. Tex. Mar. 7, 2023)).) However, the Court has established that it will not consider these contracts at the dismissal stage and that Ohio law governs. Thus, Texas' economic loss rule does not apply.

But, under Ohio law, Defendants contend, the economic loss rule bars Plaintiffs' negligent misrepresentation and negligence claims, without implicating the contracts. (Reply, Doc. 25, Pg. ID 221.) Ohio's economic loss rule "bars recovery of damages for purely economic loss from non-intentional torts." (*Id.* (citing *Brickman v. Maximus, Inc.*, No. 2:21-CV-3822, 2023 WL 2563661, at *2 (S.D. Ohio Mar. 17, 2023)).) In other words, where the economic loss is "unaccompanied by personal injury or property damage," the

economic loss rule bars recovery in a tort. *Id.* (citing *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 569 (6th Cir. 2006). Since the economic losses can be recovered only in contract, the rule applies when parties are not in privity of contract or when the damages are based on "a tort duty independent of contractually created duties." *Pavlovich,* 435 F.3d at 569. Thus, it can apply here without considering the contracts outside the pleadings.

In their Complaint, Plaintiffs allege negligent misrepresentation and negligence claims, asserting that Defendants' tortious conduct "financially damaged" them. (Compl., Doc. 1, ¶ 110.) Specifically, under both the negligent misrepresentation and negligence causes of action, Plaintiffs only claim that they were damaged by having to pay unnecessary fines and fees. (*Id.* ¶¶ 110, 149, 166.) Defendants are correct to point out that Plaintiffs fail to allege noneconomic damages resulting from Defendants' negligent conduct. (Pathward Reply, Doc. 25, Pg. ID 221; PNX Reply, Doc. 26, Pg. ID 230.) For these reasons, the economic loss rule bars Plaintiffs' recovery. Thus, Plaintiffs' negligent misrepresentation and negligence claims against Defendants must be dismissed.

### b.    Fraudulent Inducement and Fraud

Pathward also claims that Plaintiffs' fraudulent inducement cause of action should be dismissed because their Complaint has not "alleged with particularity any facts to support their claim that Pathward did not perform its limited role under the Merchant Application." (Motion, Doc. 20, Pg. ID 92.) Plaintiffs assert in their Complaint that Defendants purposefully misrepresented their intentions to comply with the Association Rules, their ability to limit Plaintiffs' exposure to certain fees and fines, their intentions and abilities to notify Plaintiffs of chargebacks, and their intention to charge Plaintiffs

10

certain fees. (Compl., Doc. 1, ¶ 120.) Plaintiffs claim that this misconduct induced them to enroll in Defendants' payment-processing services. (*Id.* ¶ 122.) Defendants contend that Plaintiffs' fraudulent inducement claim is based on an alleged failure to perform under the contract. (Motion, Doc. 20, Pg. ID 92.) Thus, it requires Plaintiffs to plead with particularity that Defendants' representation was a "false promise of future performance made with a present intent not to perform." (*Id.* (quoting *ICI Constr., Inc. v. Hufcor, Inc.,* No. H-22-3347, 2023 WL 2392738, at *15 (S.D. Tex. Mar. 7, 2023)).)

Defendants also state as a threshold matter that, under Ohio law, "fraudulent inducement can only occur when a party is induced to enter into an agreement through fraud or misrepresentation." (Reply, Doc. 25, Pg. ID 216 (citing *Life Changing Events, LLC v. Heitkoetter,* No. 5:19-CV-02057, 2020 WL 7769721, at *6 (N.D. Ohio Dec. 30, 2020) (cleaned up)); Reply, Doc. 26, Pg. ID 230.) Indeed, "fraudulent inducement involves a general duty to avoid wrongful conduct that induces a party to enter into a contract." *Aero Fulfillment Servs. Corp. v. Oracle Corp.,* 186 F. Supp.3d 764, 774 (S.D. Ohio 2016). Put simply, a claim for fraudulent inducement exists "when one induces another to enter a contract through misrepresentations." *Id.*

As described above, though, Plaintiffs do not base their claims upon the Merchant Applications and Defendants' corresponding contractual duties. Plaintiffs admit that they "do not rely on any alleged duties from a contract between Plaintiffs and Defendants to support their tort claims." (Response, Doc. 24, Pg. ID 200-01.) But, a claim for fraudulent inducement is not based "upon the contract itself," unlike a breach of contract claim. *Aero*, 186 F. Supp.3d at 774. Fraudulent inducement claims involve duties separate

11

from those created by any agreement. *Id.* As the Court determined, Plaintiffs acknowledge the Merchant Application contracts in their Complaint, even though the contracts are not central to their claims. Plaintiffs allege that Defendants' misrepresentations "were material to Plaintiffs' decision" to enroll in their services. (Compl., Doc. 1, ¶ 55.) They do not allege that Defendants breached any contractual obligations, but that they were fraudulently induced into transacting with Defendants. The Court can determine whether this fraudulent inducement claim meets the pleading standard without needing to consider the alleged contractual duties.

As described above, both fraud and fraudulent inducement require a stricter pleading standard. Fed. R. Civ. P. 9(b). Defendants contend that Plaintiffs "have failed to plead facts with particularity to support" their fraud claims against them. (Reply, Doc. 25, Pg. ID 217.) PNX made a similar argument in its Motion, but also joined Pathward in this argument in its Reply. (*See* PNX Motion, Doc. 22-1, Pg. ID 180-81; Reply, Doc. 26, Pg. ID 230.) For the sake of conciseness, the Court will consider both Defendants' Rule 9(b) arguments together.

Ohio law requires that a plaintiff demonstrate: "(1) a representation or . . . concealment of fact; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred; (4) with the intent to mislead another into relying on it; (5) justifiable reliance; and (6) a resulting injury." *Aero*, 186 F. Supp.3d at 775 (citing *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007)). To satisfy Rule 9(b)'s pleading standard, a plaintiff must generally "allege the time, place, and content of the

alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Id.* at 776 (quoting *United States ex rel. Marlar v. BWXT Y-12 LLC*, 525 F.3d 439, 444 (6th Cir. 2008)). But, these additional requirements are not meant to "defeat the general policy of simplicity and flexibility in pleadings." *Id.* (quoting *Spears v. Chrysler, LLC,* No. 3:08-CV-331, 2011 WL 540284, at *5 (S.D. Ohio Feb. 8, 2011)). "So long as a party pleads sufficient detail . . . to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *Id.* (cleaned up). Importantly, though, when a plaintiff claims fraud against multiple defendants, "each defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) (quotation omitted). In other words, a plaintiff cannot engage in group pleading without separately explaining each defendant's role in the alleged fraudulent conduct. *Id.* In *Bledsoe*, the Sixth Circuit found dismissal appropriate because the complaint did not list dates or names of the individual defendants involved, and collectively made allegations that defendants "engaged in certain practices, without ever specifying the defendants to which it was referring." *Id.*

Looking first to the fraudulent inducement claim, Pathward and PNX allege that Plaintiffs failed to plead with particularity facts showing that they fraudulently induced Plaintiffs into enrolling in the payment systems. (Pathward Motion, Doc. 20, Pg. ID 92; PNX Motion, Doc. 22-1, Pg. ID 180-81.) Plaintiffs, in response, point to the allegations that list the specific representations that Defendants made to them and how they influenced

13

Plaintiffs' enrollment. (Response, Doc. 24, Pg. ID 203; *see also* Compl., Doc. 1, ¶¶ 40-56.) But, as Pathward points out, the fraudulent inducement claim does not state where, when, or how these alleged misrepresentations were made. (Reply, Doc. 25, Pg. ID 217-18.) The Court agrees that Plaintiffs failed to plead their fraudulent inducement claim with the particularity required by Rule 9(b); the Complaint does not put either Defendant on notice of the circumstances surrounding their alleged fraudulent conduct. *Bledsoe*, 342 F.3d at 643. Thus, the fraudulent inducement cause of action fails to state a claim on which relief can be granted.

Moving next to Plaintiffs' fraud claim, Pathward and PNX make the same argument as they do for fraudulent inducement: that Plaintiffs failed to plead fraud with particularity. (Pathward's Motion, Doc. 20, Pg. ID 92-93; PNX's Motion, Doc. 22-1, Pg. ID 180-81.) And, in return, Plaintiffs again argue that their cause of action details the specific fraudulent conduct of Defendants. (Response, Doc. 25, Pg. ID 203.) Indeed, Plaintiffs include greater detail in their fraud cause of action than they do for fraudulent inducement. Examining the Complaint, Plaintiffs state several instances of fraud and include dates, communications, and specific individuals who engaged in the alleged fraud. (Compl., Doc. 1, ¶¶ 70-82, 89-91.) The Court finds that, with these details, Plaintiffs' fraud claim satisfies the Rule 9(b) pleading standard. *See Aero*, 186 F. Supp.3d at 776. But, Pathward points out that Plaintiffs only mention the specific conduct of PNX and its employees, and cannot denote any specific conduct of Pathward. (Reply, Doc. 25, Pg. ID 218.) The Court agrees. Plaintiffs' Complaint mentions the communications with PNX and its employees that included alleged misrepresentations, but it does not do the same

14

for Pathward. (*See* Compl., Doc. 1, ¶¶ 57-97.) The Complaint does not state any Pathward-specific conduct related to the fraud claim. Therefore, Plaintiffs have met the Rule 9(b) pleading standard for the fraud claim against PNX but have failed to do so for Pathward.

### c. Vicarious Liability

In the alternative, Plaintiffs assert that Pathward can still be liable for PNX's fraud and other alleged misconduct, as PNX is Pathward's agent. (Compl., Doc. 1, ¶¶ 127, 145, 151, 158, 180; Response, Doc. 24, Pg. ID 204-05.) As the negligence, negligent misrepresentation, and fraudulent inducement claims cannot proceed, Plaintiffs' theory of Pathward's vicarious liability will apply only to the remaining fraud and conversion claims. Pathward, however, denies that it can be held vicariously liable for PNX's conduct. (Reply, Doc. 25, Pg. ID 223.)

In rebuttal, Plaintiffs point to Ohio law showing that "a principal is vicariously liable for the torts of its agent if those torts are committed within the scope of the agency relationship." (Response, Doc. 24, Pg. ID 204 (citing *Auer v. Paliath*, 17 N.E.3d 561, 565 (Ohio 2014)).) This includes fraud. (*Id.* (citing *Groob v. KeyBank*, 843 N.E.2d 1170, 1178 (Ohio 2006)).) Plaintiffs claim that they have "sufficiently pled the existence of a principal-agent relationship, which is a fact-bound determination." (*Id.*) In the Complaint, Plaintiffs state that the Association Rules of Card Members require that acquiring banks, like Pathward, agree that third-party processors, like PNX, are their agents. (*Id.*; *see also* Compl., Doc. 1, ¶ 36.) The acquiring banks are then entirely responsible for, as well as able to control, those agents. (Compl., Doc. 1, ¶ 37.) Furthermore, Plaintiffs state that because Pathward held itself out as an acquiring bank, it implied that it would follow the

Association Rules and so any of its service providers, like PNX, are Pathward's agent. (*Id.* ¶ 30-39; Response, Doc. 24, Pg. ID 205.)

In its Reply, Pathward argues that Plaintiffs have not alleged sufficient facts to establish a principal-agent relationship between Pathward and PNX. (Reply, Doc. 25, Pg. ID 223-24.) In support, Pathward asserts that Plaintiffs must allege facts that show Pathward directly granted PNX actual authority in express terms, and "merely alleging a contractual relationship is not sufficient to establish actual authority." (*Id.* (citing *Damon's Missouri, Inc. v. Davis*, 590 N.E.2d 254, 257 (Ohio 1992)).) Pathward claims that Plaintiffs provided only conclusory allegations that Pathward contractually had the right to control PNX's performance of payment-processing systems. (*Id.*) Pathward also challenges Plaintiffs' use of the Association Rules as further evidence of a principal-agent relationship. (*Id.* at Pg. ID 224.) And, according to Pathward, Plaintiffs have not pled sufficient facts to show Pathward's apparent authority either. (*Id.*)

Courts have dismissed parties for lack of a principal-agent relationship when the plaintiff has merely stated a legal conclusion asserting that the relationship existed. *See, e.g., Bricker v. R & A Pizza*, 804 F. Supp.2d 615, 622 (S.D. Ohio 2011) (dismissing complaint that contained only a sole conclusory statement that one party was the agent of the moving party). Conversely, courts have allowed cases to proceed under the agency theory when allegations go beyond mere conclusions and include the "aspects of the [agent's conduct that the principal] controlled." *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp.3d 959, 972 (S.D. Ohio 2019). Like the plaintiffs in both *Bricker* and *Wyndham*, Plaintiffs' Complaint contains legal conclusions asserting an agency relationship.

16

(Compl., Doc. 1, ¶ 27.) But, like in *Wyndham*, it also lists specific services that PNX provides on behalf of Pathward. (*Id.* ¶ 29.) Construing these allegations as true and viewing them in the light most favorable to Plaintiffs, the Complaint sufficiently alleges a principal-agent relationship between Pathward and PNX. Pathward can thus be held vicariously liable for PNX's alleged fraud. Furthermore, since Plaintiffs sufficiently pled the existence of the principal-agent relationship between Pathward and PNX, the remaining conversion claim Plaintiffs bring against Pathward can also proceed under a theory of vicarious liability.

### d. Accounting

Pathward next takes issue with Plaintiffs' accounting cause of action, which demands that Pathward "account for the [alleged] money [it] owes Plaintiffs and pay Plaintiffs the same." (Motion, Doc. 20, Pg. ID 93-94 (cleaned up); *see also* Compl., Doc. 1, ¶¶ 181-87.) Pathward relies on Texas law which requires the existence of a contractual or fiduciary obligation for an independent accounting cause of action. (*Id.* at Pg. ID 94.) Absent either of these, the accounting claim must be dismissed. (*Id.*) Plaintiffs respond that, under the governing Ohio law, "a request for accounting is proper where there are allegations of fraud." (Response, Doc. 24, Pg. ID 206 (citing *Yonkov v. Maximus Holding Grp., LLC,* No. 1:23-CV-1317, 2024 WL 2300967, at *7 (N.D. Ohio May 21, 2024)).) They note that an accounting "may not be necessary when discovery provides an adequate basis to ascertain damages," but, at this stage, "it is not clear what discovery will show regarding how much" money Defendants allegedly wrongfully kept. (*Id.*)

In reply, Pathward (and PNX, in joining the Reply) cites to Ohio law on

accounting, which states that accounting is improper "where there is an adequate remedy at law." (Reply, Doc. 25, Pg. ID 221 (quoting *Yonkov,* 2024 WL 2300967, at *6) (cleaned up).) Furthermore, accounting is a "rare" equitable remedy that requires more than alleging only fraud. (*Id.* at Pg. ID 222.) Historically, the required elements for bringing an accounting are "fraud, a fiduciary or trust relationship, and necessity." *Sabre Energy Corp. v. Gulfport Energy Corp.*, No. 2:19-CV-5559, 2021 WL 2779157, at *4 (S.D. Ohio July 2, 2021) (cleaned up). Without these elements, and with damages easily calculated through discovery, an accounting claim must be dismissed. *Id.* (dismissing an accounting claim where plaintiff failed to allege the required elements and where damages were readily ascertainable through discovery); *see also Executone of Columbus, Inc. v. Inter-Tel, Inc.*, No. 2:06-CV-00126, 2007 WL 1144866, at *5 (S.D. Ohio Apr. 16, 2007) (finding the same).

In their Complaint, Plaintiffs allege that Defendants owed them a fiduciary duty, and that Defendants fraudulently withheld or took money from them. (Compl., Doc. 1, ¶¶ 181-87.) But, Plaintiffs do not specifically allege why accounting is necessary in order to adequately remedy the harm Defendants allegedly caused. And, Plaintiffs' Response provides little additional insight on why no other legal remedies will be sufficient, just stating simply that "discovery may not provide an adequate basis to ascertain damages." (Response, Doc. 24, Pg. ID 206-07.) In fact, in their cause of action for conversion, Plaintiffs state that "all of the above fees and chargebacks are traceable to specifically identifiable transactions for which Defendants had a specific obligation to deliver the money in question to Plaintiffs." (Compl., Doc. 1, ¶ 156.) Plaintiffs have not explained why these "specifically identifiable transactions" would not be discoverable. Thus, Plaintiffs have

18

failed to adequately plead a claim for accounting.

### e.    Conversion

In its Motion, Pathward argues that the economic loss rule under Texas law bars Plaintiffs' conversion claim. (Motion, Doc. 20, Pg. ID 90.) That said, as this Court has established under the governing Ohio law, the economic loss rule does not bar conversion, an intentional tort. *Pavlovich,* 435 F.3d at 569. Pathward also argues that Plaintiffs have not pled sufficient facts to properly state a claim for conversion. (Reply, Doc. 25, Pg. ID 220.) In making this argument, Pathward cites to case law describing the elements a plaintiff must meet "to prevail on a conversion claim." (*Id.* (quoting *Alexander v. Motorists Mut. Ins. Co.*, No. C-110836, 2012 WL 3711299, at *3 (Ohio App. Aug. 29, 2012)).) But, at this stage of litigation, the Court must construe the allegations as true and view them in the light most favorable to Plaintiffs; then, it must establish whether Plaintiffs have stated a claim upon which relief can be granted. *Doe*, 903 F.3d at 581. Unlike fraud, conversion does not require a heightened pleading standard. In the Complaint, Plaintiffs allege that Defendants had improperly withheld chargeback funds and charged Plaintiffs non-existent fees, and that, at the time, Plaintiffs were the rightful owners of that money. (Compl., Doc. 1, ¶¶ 152-58.) Construing these allegations as true, Plaintiffs have adequately pled a cause of action for conversion. *See Kuvedina, LLC v. Cognizant Tech. Solutions*, 946 F. Supp.2d 749, 761 (S.D. Ohio 2013).

### f.    Barred Damages

Finally, Pathward asserts that Plaintiffs' claims for compensatory and punitive damages, as well as for disgorgement of profits, are all barred by the terms of the

Merchant Applications. (Motion, Doc. 20, Pg. ID 96.) PNX joins Pathward in this argument. (PNX's Motion, Doc. 22-1, Pg. ID 181.) As Plaintiffs argue in response, and as the Court has determined, the Merchant Applications are not properly before the Court on Defendants' Motions to Dismiss. (*See* Response, Doc. 24, Pg. ID 202.) Defendants may renew these arguments at a later stage of litigation when the Court can consider these documents. But on Defendants' current Motions, the Court cannot consider bases for dismissal grounded solely in these documents.

### IV. PNX's Motion to Dismiss

PNX joins Pathward in its Motion as it relates to the economic loss rule, barred damages, and Rule 9(b) pleading standard arguments. (PNX's Motion, Doc. 22-1, Pg. ID 181.) As the Court has already discussed those arguments above, it will not repeat the analysis here. PNX also argues that Plaintiffs' accounting claim is not a proper cause of action. (*Id.* at Pg. ID 180-81.) In its Motion, PNX incorrectly asserts that "accounting is not a cause of action under Texas law or Ohio law." (PNX's Motion, Doc. 22-1, Pg. ID 181-82.) This assertion is mistaken, as demonstrated above. Still, as PNX also joined Pathward in its Reply, and Pathward's Reply successfully argued to dismiss Plaintiffs' accounting cause of action, the claim against PNX for accounting shall also be dismissed.

### CONCLUSION

For these reasons, the Court **ORDERS** the following:

1. Defendant Pathward's Motion to Dismiss (Doc. 20) is **GRANTED IN PART AND DENIED IN PART**;

2. Defendant PNX's Motion to Dismiss (Doc. 22) is **GRANTED IN PART**

**AND DENIED IN PART**;

3. Plaintiffs' claims for negligent misrepresentation, negligence, fraudulent inducement, and accounting against all Defendants are **DISMISSED WITH PREJUDICE**; and

4. Plaintiffs' remaining claims against all Defendants **SHALL PROCEED**.

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____
JUDGE MATTHEW W. McFARLAND